# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

FILED

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.H. and B.H.**

**No. 18-0578** (Raleigh County 2017-JA-135-B and 2017-JA-137-B)

## MEMORANDUM DECISION

Petitioner Father J.H., by counsel Daniel J. Burns, appeals the Circuit Court of Raleigh County's June 1, 2018, order terminating his parental rights to M.H. and B.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. Respondent R.R., legal guardian of B.H., by counsel Matthew A. Victor, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Vickie L. Hylton, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) denying his motion to continue his post-adjudicatory improvement period; (2) terminating his parental rights without imposing a less-restrictive dispositional alternative; (3) failing to hold a timely preliminary hearing; (4) and failing to require a multidisciplinary team ("MDT") meeting within thirty days of the filing of the petition. Petitioner also argues that the DHHR's failure to file a family case plan within thirty days of adjudication is reversible error.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed a petition alleging that petitioner engaged in domestic violence in the presence of M.H. Specifically, the DHHR alleged that petitioner burned the mother with a lit cigarette, pushed the mother to the ground while she was holding M.H. and attempting to leave the home, and threatened to kill himself and the mother while brandishing a knife. According to the DHHR, the mother obtained a domestic violence protective order. The DHHR alleged that petitioner was later arrested for violating that protective order. Later in May

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

of 2017, the DHHR amended the petition to include allegations of abandonment and that petitioner left B.H. in the custody of his legal guardian, R.R., without maintaining contact with R.R or B.H. Moreover, the DHHR alleged that petitioner called only once in December of 2016 to check on B.H. and failed to provide any financial support for B.H.

The circuit court set a preliminary hearing for June of 2018. The circuit court continued the hearing twice due to a scheduling conflict with a criminal trial and unavailability of the circuit court.[2] Ultimately, petitioner waived the preliminary hearing when the parties reconvened on August 29, 2017. Thereafter, the circuit court ordered petitioner to participate in drug and alcohol screening and a psychological examination.

In October of 2017, the circuit court held an adjudicatory hearing and petitioner indicated that he intended to stipulate to the allegations in the petition. However, petitioner's written stipulation had not been prepared. The circuit court continued the hearing to allow counsel to prepare the stipulation. Additionally, a court summary prepared by the DHHR and dated October 31, 2017, reported that petitioner "has been completely unreachable" after numerous attempts to contact him regarding visitation and services. The court summary also provided that B.H. did not wish to visit with petitioner. In December of 2017, the circuit court held a second adjudicatory hearing and petitioner presented his written stipulation to the allegations of abuse and neglect. Following this stipulation, the circuit court found that petitioner was an abusing parent. Petitioner moved for a post-adjudicatory improvement period and the circuit court granted that motion.

The circuit court held a review hearing in March of 2018; petitioner did not appear, but was represented by counsel. The circuit court considered a DHHR court summary, dated March 19, 2018, that reported petitioner had not exercised any visitation with his children or contacted his service provider. The DHHR filed a motion to terminate petitioner's parental rights alleging that petitioner failed to fully participate in drug and alcohol screening, that he tested positive for THC on one occasion and on another occasion positive for THC and cocaine, that he failed to exercise any visitation with M.H., and that he had not signed the case plan due to his unavailability.

In May of 2018, the circuit court held the final dispositional hearing and heard evidence regarding petitioner's participation in his post-adjudicatory improvement period. A DHHR worker testified that the parties met for a multidisciplinary team ("MDT") meeting in January of 2018 and agreed that petitioner would participate in anger management classes, outpatient drug rehabilitation, supervised visitation, random drug and alcohol screening, and obtain suitable housing. According to the worker, petitioner had not participated in any services since the inception of his improvement period. The worker indicated that he was aware petitioner suffered from some illness and was briefly hospitalized as a result. The worker explained that at the MDT meeting, he advised petitioner that the DHHR could provide services in the physical rehabilitation center where petitioner was expected to live while recovering from his ailment.

_____

[2]The parties appeared in person on the original hearing date to reschedule; petitioner did not object to the continuance or indicate that he wished to waive his preliminary hearing.

However, petitioner left that facility against medical advice and the worker testified that he had not heard from petitioner since that time.

A service provider testified and corroborated petitioner's lack of participation in services. The provider explained that petitioner never contacted him regarding services or visitations with his children. However, the provider indicated that petitioner did contact him in February of 2018 to request contact information for the Child Protective Services hotline. According to the provider, petitioner visited M.H.'s mother's home and believed it was not suitable for M.H. Finally, petitioner testified that he suffered from a debilitating pain and required hospitalization in December of 2018. Following his hospital stay, petitioner explained that he left the rehabilitation facility after three days to live with a childhood friend. Petitioner stated that he lived with this person through April of 2018 and had no access to a telephone in order to contact the DHHR or his service provider. Petitioner also admitted that he did not participate in drug screening, did not have stable housing, and would "probably not" pass a drug screen. Following the presentation of evidence, petitioner orally requested an extension of his post-adjudicatory improvement period.

Ultimately, the circuit court found that petitioner had failed to participate in his improvement period. Further, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect because of his lack of interest in participating in the terms of his case plan. Accordingly, the circuit court terminated petitioner's parental rights. The circuit court memorialized its decision in its June 1, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]B.H.'s mother's parental rights were terminated in a prior proceeding. M.H.'s mother was a nonabusing parent and maintains custody of M.H. According to the parties, the permanency plan for B.H. is adoption in his current foster placement and the permanency plan for M.H. is continuation in her mother's custody.

Syl. Pt. 1, *In re Cecil T*., 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying his motion to extend his post-adjudicatory improvement period despite substantial, compelling circumstances that prevented his participation. Petitioner asserts that his illness and subsequent hospital stay in December of 2017 "lasted for several weeks to more than a month" and rendered him unable to attend services or otherwise participate in his improvement period. Although petitioner acknowledges that an extension should only be granted when "a respondent has substantially complied with the terms of the improvement period," he argues that the circuit court should have granted his motion for an extension because of this medical emergency. We disagree.

The circuit court correctly denied petitioner's motion to extend his post-adjudicatory improvement period because petitioner did not substantially comply with the terms of the improvement period. West Virginia Code § 49-4-610(6) provides that a circuit court may extend a post-adjudicatory improvement period

> when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

Petitioner did not demonstrate compliance with any of the terms of his improvement period, despite attempted accommodations by the DHHR. In response to petitioner's hospital stay, the DHHR indicated that it would provide services while petitioner underwent physical rehabilitation. However, petitioner left the facility without notifying the DHHR and did not attempt to contact the DHHR afterwards. West Virginia Code § 49-4-610(4)(A) specifies that "the respondent shall be responsible for the initiation and the completion of all terms of the improvement period." Yet, it is clear from the record that petitioner made no attempt to initiate services with the DHHR or on his own. Accordingly, we find that the circuit court did not err in denying petitioner's motion to extend his post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative. However, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child."

The circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future is supported by the record. Petitioner admitted that he engaged in serious acts of domestic violence against the mother of M.H. Despite his admission, petitioner made no effort to remedy his conduct through services or counseling. Further, petitioner frequently missed visitations with M.H. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n.14, 479 S.E.2d 589, 600, n.14 (1996)(citing *Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Although, on appeal, petitioner blames his employment for multiple missed visitations, petitioner never produced any evidence that his work interfered with the visitation. Moreover, the service provider testified that petitioner rarely contacted him in order to schedule visitation with his child. Finally, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Petitioner's failure to comply with any services throughout the case supports the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Accordingly, we find no error in the termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in failing to comply with certain statutory time constraints. Although these three assignments of error will be addressed individually, these assertions share a common basis in this Court's prior holdings.

> "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009).

First, petitioner argues that the circuit court violated his due process rights by failing to adhere to the time constraint for a preliminary hearing as provided in West Virginia Code § 49-4-601(c). This statute provides "the preliminary hearing shall be held within ten days of the order continuing or transferring custody, unless a continuance for a reasonable time is granted to a date

5

certain, for good cause shown." However, petitioner never objected to the continuances in this case and, ultimately, waived his preliminary hearing. Also, petitioner does not assert any prejudice as a result of these continuances. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va 818, 679 S.E.2d 650 (2009). Because it is clear that petitioner did not object to these continuances below and ultimately waived his preliminary hearing, he has waived his assignment of error. Accordingly, petitioner is entitled to no relief.

Further, petitioner asserts that he was not granted an improvement period until December of 2017 and that the delay caused him to miss visits with his children. Yet, it is clear from the record that petitioner requested a continuance of the adjudicatory hearing from October of 2017 to December of 2017 in order to prepare his stipulation. Moreover, the October 31, 2017, court summary provides that the DHHR attempted to contact petitioner regarding services and visits with his children, but that petitioner was "completely unreachable." It is apparent from the record that petitioner's noncompliance with the DHHR was a more significant barrier to services and visitations than the continuation of hearings in this case. Therefore, we do not find a substantial frustration or disregard for the Rules of Child Abuse and Neglect proceedings such that vacation is warranted.

Next, petitioner argues that the circuit court's failure to adhere to West Virginia Code § 49-4-405 constitutes a violation of his due process rights. This statute provides

> [w]ithin thirty days of the initiation of a judicial proceeding pursuant to part six, of this article, the Department of Health and Human Services shall convene a multidisciplinary treatment team to assess, plan and implement a comprehensive, individualized service plan for children who are victims of abuse or neglect and their families.

Petitioner asserts that the first MDT meeting occurred in January of 2018. As a result of this delay, petitioner argues that he had "no clear objectives" regarding the DHHR's requirements for parental improvement. However, in petitioner's motion for a post-adjudicatory improvement period, filed on December 22, 2017, he asserts that "he has attended the preliminary hearing and the MDT held in this matter." Clearly, petitioner misstates the facts below. Additionally, the record is clear that petitioner was noncompliant with services and visitation before January of 2018. Therefore, we do not find that a delay in the holding of an MDT in this case substantially frustrated or disregarded the Rules of Child Abuse and Neglect Proceedings such that vacation is warranted. The circuit court did not err.

Finally, petitioner argues that the DHHR failed to file a family case plan within thirty days of the adjudicatory hearing as required by West Virginia Code §49-4-408.[4] Petitioner notes

---

[4]Petitioner cites to "W.Va. Code 49-6-2(b)" as authority for this requirement. However, Chapter 49 of the West Virginia Code was recodified in 2016 and the applicable code section is §49-4-408.

that "[t]he purpose of the family case plan . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. W.Va. Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987). However, despite when petitioner's case plan was filed, petitioner never attempted to comply with services or visitations provided by the DHHR. Even if the family case plan was not filed until January of 2018 as petitioner asserts, petitioner had clear direction from the DHHR for the remainder of his improvement period and did not pursue the goals agreed upon in that case plan. Accordingly, we find that the late filing of petitioner's family case plan did not substantially frustrate or disregard the Rules of Child Abuse and Neglect Proceedings such that vacation is warranted in this case. The circuit court did not err.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 1, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 21, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment